# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA
# CIVIL TRIAL DIVISION

---

BUFFALO GOLD LLC and       :
2000 US Hwy 287          :
Goodnight, TX  79226      :
     And               :
THE BUFFALO WOOL CO.    :
201 Spring Creek Parkway   :
Weatherford, TX  76097    :
         Plaintiffs   :
                    :
  vs.                 :
                    :   No.      -cv-
BOLLMAN HAT COMPANY   :
Corporate Headquarters   :
110 E. Main Street        :
P.O. Box 517             :
Adamstown, PA  19501    :
         Defendant  :

---

## CIVIL ACTION COMPLAINT

## PARTIES

1.  Plaintiffs are, BUFFALO GOLD LLC, residing at 2000 US Hwy 287, Goodnight, Texas, is a Texas Limited Liability Company (hereafter BG) and THE BUFFALO WOOL CO., 201 Spring Creek Parkway, Weatherford, TX  76097, a Texas sole proprietorship, (hereafter BWC).

2.  Defendant, BOLLMAN HAT COMPANY, (hereafter Bollman), has a business residence at 110 E. Main Street, P.O. Box 517, Adamstown, PA  19501, and is a corporation doing business at the address indicated.

## II.  FACTUAL BACKGROUND

3.   Jurisdiction in this case is based upon Diversity of Citizenship as Plaintiffs and the Defendant are citizens of different states, wherein the Plaintiffs are citizens of the State of Texas, and the Defendant is a citizen of the State of Pennsylvania and the amount in controversy exceeds the sum of $150,000, exclusive of interest and costs.

4.   Beginning in 2001, Plaintiff, BG, started harvesting and processing the winter hair coat from American Bison for use as commercial fiber.  Plaintiff was at that time the only entity commercially harvesting and utilizing bison fiber.

5.   Bollman contacted Plaintiffs on or around 2010, to see if they could buy some bison fiber to blend with wool to make hats.  Initially Plaintiffs offered to sell them some fiber but as negotiations progressed it ended up with BG donating to Bollman about 500 lbs. of bison fiber.

6.   Plaintiffs offered to give that carding waste fiber to Defendant at no cost and also pay for shipping.  This in exchange for an agreed number of the finished hats.  They agreed and Plaintiffs sent the fiber to them.

7.   The fiber is called "carding waste" and is the bison fiber that is extracted from the "bison down" (the softer undercoat) during the "dehairing process".  All the fiber is put through a mechanical separation process to get the proper cloth for Plaintiffs' socks and gloves (the bison down).  The remainder fiber is "carding waste".  This is the fiber that from that time on has been sent to Bollman to make hats for Plaintiff.

8.  Defendant received this bison fiber at their plant, though the first shipment which Plaintiffs sent to them, thereafter there were between 4 and 8 additional shipments which gave Defendants a reasonable reserve on hand.

9.  Plaintiffs never billed Defendant for the fiber.  Defendants never told Plaintiffs to take the fiber back.  Defendant, from 2011 through 2021, told Plaintiffs they needed more fiber.  Defendant continued to build finished hats for Plaintiffs out of the blended fibers; containing bison and Defendant's wool.  Plaintiffs were then able to get quantities of hats and/or shipments thereof as needed.

10.  At no time did Bollman ever "account" to Plaintiff or either of them for the fiber used in hat production.  Hat production over the period from 2011 through 2021 approximated 5,000 units in 13 styles, more or less.

11.  In approximately 2016, the parties began discussions about also creating wool blend hats similar to the bison blend, but using the carding waste from Muskox (which fiber is also known as qiviut).  Based on those discussions, Plaintiff Buffalo Gold caused 50+/- kg of muskox carding waste to be delivered to Defendant.  Defendant received that fiber on or about June, 2017, and thereafter built for and made available for delivery to Plaintiff a Muskox blend fiber hat, the "Arctic Circle".  Although no accounting of the fiber has ever been received, upon information and belief Bollman used no more than 10 kg of that fiber in production.

12.  From 2010-2021 Defendant was building hats for Plaintiffs.  From time to time Alexis Biondi, Defendant's designated representative to Plaintiffs,

would contact Plaintiffs to tell them there were "extra" bodies (being the felted blanks made of Plaintiffs bison and/or muskox fiber and Bollman's wool) in their warehouse that we could have built into hats.  Plaintiffs would try and utilize them for the both the benefit of Plaintiffs and Defendant, as these would take the form of "short" orders that didn't require as much of a cash outlay but still allowed Plaintiffs to restock on some of Defendant's supply on some models.  However, Defendant never refused to take a new hat order regardless of what extra hat bodies they might have produced.

13.  As referred to previously from 2010 to 2021, Plaintiffs supplied Bollman, at no charge, scoured bison fiber ("carding waste"); which was the leftover fiber after Plaintiffs got what they needed for gloves and knitwear. From that they built a bison fiber/wool blend hat - the Bailey of Hollywood Fedora which was a highly marketable at a premium price.

14.  Defendant claims, without documentation, that they had to "destroy" both the bison and the muskox fiber entrusted to Bollman due to moth infestation.  Defendants claim, without documentation, that only Plaintiffs' fiber had moths and not any of the wool that they use in production.  This the Plaintiffs vehemently dispute.

15.  Defendant has used some of that fiber in hat production.  Some of the hats Defendant bought and paid for.  Some of the hats are a "work in process", as Defendant's used Plaintiffs' fiber without consent.  Thus Defendant wrongfully utilized Plaintiffs' fiber in these bodies without authorization.

16.  At all times Defendant dictated the quantity of hats for each order of Plaintiffs.  Defendants based each order on "a mill" - one hundred pounds of blended fiber.  At all times, Defendant controlled the amount of fiber blended to create the hats and or hat bodes needed for Plaintiffs various orders.  At all times, it was both understood and expressly required that regardless of the number of hats on any purchase order (PO) of Plaintiffs, that Defendant would use up all of the bodies produced in each style, called for on the PO.  Thus there would be no accumulation of hat bodies utilizing Plaintiff fiber. Defendant failed to utilize all such hat bodies, or intentionally over produced hat bodies wasting Plaintiffs fiber.

17.  Damages the Plaintiffs have suffered the following damages:

1.  The fiber is bison fiber from the Buffalo Wool Co. in the amount of 1500 lbs. was sent in three (3) shipments arriving from 2017-2019 and having a fair market value of $24.20 per lb.  Total value $36,300.

2.  The second is muskox fiber from Herd Wear, being 50 kg delivered in summer of 2017.  Defendants have wrongfully converted and have not accounted for the majority of this fiber.  Based on information and belief, that Defendant used roughly 10 lbs., in hat production for Buffalo Gold.  That is valued at least 40 kg @$700 per kg. = $28,000.

3.  Lost profit and reputational loss from orders that Bollman took and failed to produce ......$175,000.

4.   Consequential Damages......$100,000.

TOTAL...............................$339,000.

## COUNT I

## BREACH OF CONTRACT AND
## BREACH OF IMPLIED COVENANT OF GOOD FAITH

18.  Plaintiffs incorporate the allegations contained in paragraphs 1 through 17, above, as though the same were set forth herein at length.

19.  As a direct and proximate result of Defendant's breach of contract, Plaintiffs have been damaged.

WHEREFORE, Plaintiffs demand judgment in its favor and against Defendant for a sum in excess of Three Hundred Thirty-nine Thousand ($339,000) Dollars along with punitive damages and any other relief the Court deems just and proper.

## COUNT II

## MISREPRESENTATION AND FRAUD IN THE INDUCEMENT

20.  Plaintiffs restate all previous allegations fully herein from paragraph 1 through 19, as fully as if set forth herein.

21.  That Defendant misrepresented major terms and conditions to Plaintiffs on a continuing basis.

22.  Plaintiffs have been damaged and incurred financial loss by the foregoing conduct in that the Plaintiffs have been damaged in an amount in excess of Three Hundred Thirty-nine Thousand ($339,000) Dollars.

WHEREFORE, Plaintiffs demand Judgment in their favor against Defendant in an amount in excess of Three Hundred Thirty-nine Thousand ($339,000) Dollars plus fees and costs

## COUNT III

## PUNITIVE DAMAGES

23.  Plaintiffs restate all previous allegations in paragraphs 1 through 22 fully herein, as set forth herein.

24.  Defendants engaged in actions and communications and lack thereof and active misrepresentations that impacted negatively, as per above, regarding Plaintiffs to its great detriment.

25.  By material failure to perform the Plaintiffs, Defendant has intentionally have caused the Plaintiffs representatives great economic loss, great emotional pain and loss and have engaged in egregious and vexatious activity to harm the Plaintiffs, as to give rise to punitive damages to be decided by the Court.

26.  Plaintiffs have been damaged and incurred financial loss by the foregoing conduct in that Plaintiffs are entitled in an amount in excess of One Hundred Fifty Thousand ($150,000) Dollars, with punitive damages in excess of One Hundred Thousand ($100,000) Dollars.

WHEREFORE, Plaintiffs demand Judgment in their favor against Defendant in an amount at minimum in excess of Three Hundred Thirty-nine Thousand ($339,000) Dollars.

## COUNT IV

## TORTIOUS INTERFERENCE WITH CONTRACT RELATIONS

27.  Plaintiffs restate all previous allegations fully herein from 1 to 26, as if set forth herein in extenso.

28.  At all times relevant, Defendant owed a duty to Plaintiffs, to properly perform under Plaintiffs agreement.

29.  Defendant engaged in intentional acts,  omissions and lack of sufficient communications and lack thereof in response to their obligations that impacted negatively, as per above regarding Plaintiffs to their detriment.

30.  By misrepresenting to Plaintiffs, Defendant tortuously interfered with Plaintiffs business relationships, customers, actions and intentionally has caused the Plaintiffs great emotional pain and loss and has engaged in egregious and vexatious activity to harm the Plaintiffs, as to give rise to punitive damages.

31.  Plaintiffs have been damaged and incurred financial loss by the foregoing conduct in that Plaintiff in an amount in excess of One Hundred Fifty Thousand ($150,000) Dollars and punitive damages in excess of One Hundred Thousand ($100,000) Dollars.

WHEREFORE, Plaintiffs demand Judgment in their favor against Defendant in an amount at minimum in excess of Three Hundred Thirty-nine Thousand ($339,000) Dollars.

## COUNT V

## QUANTUM MERUIT

8

32.  Plaintiffs restate all previous allegations fully herein from 1 to 31, as if set forth herein in extenso.

33.  Plaintiffs have rendered services and provided goods as Defendant and their agents requested and for which the Defendant and their agents promised to pay.

34.  Said goods and services are in excess of One Hundred Fifty Thousand ($150,000) Dollars.

35.  No part of the above amount has been paid, despite Plaintiffs' repeated demands for payment.

36.  Plaintiffs are owed the sum stated above.

WHEREFORE, Plaintiffs demand judgment against Defendant in an amount in excess of Three Hundred Thirty-nine Thousand ($339,000) Dollars plus fees and costs, plus fees and costs.

## **COUNT VI**

## **UNJUST ENRICHMENT**

37.  Plaintiffs restate all previous allegations fully herein from 1 to 36, as if set forth herein in extenso.

38.  Plaintiffs provided goods and services for the benefit of Defendant and their customers without receiving full payment for their services and goods.

39.  Defendant benefitted from the goods and services provided by Plaintiffs.

40.  Defendant obtained benefits without providing to Plaintiffs full payments for the services rendered and have unjustly been enriched by such actions.

WHEREFORE, Plaintiffs demand judgment against Defendant in an amount in excess of Three Hundred Thirty-nine Thousand ($339,000) Dollars plus fees and costs.

Respectfully Submitted,


DATED: _8/22/2023_                    By: _/s/   Jeffrey D. Servin, Esquire_
                                          JEFFREY D. SERVIN, ESQUIRE
                                          Attorney for Plaintiff
                                          Attorney I.D. 19958
                                          1800 JFK Blvd., Suite 300
                                          Philadelphia, PA 19103
                                          Phone: (215) 665-1212
                                          Fax: (215) 654- 0357
                                          Email:  JDServin@comcast.net

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury as to all issues.

*/s/    Jeffrey D. Servin, Esquire*
JEFFREY D. SERVIN, ESQUIRE